UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | **GOVERNMENT'S SENTENCING MEMORANDUM** |
| - v. - | : | |
| FRANKIE TORRES, | : | 07 Cr. 957 (RJS) |
| Defendant. | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**SENTENCING MEMORANDUM OF THE UNITED STATES OF AMERICA**

MICHAEL J. GARCIA
*United States Attorney for the*
*Southern District of New York*
*Attorney for the United States*
*of America*

RANDALL W. JACKSON
Assistant United States Attorney,
*Of Counsel*



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York  10007*

May 20, 2008

**BY ECF**

Honorable Richard J. Sullivan
United States District Judge
Southern District of New York
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007

> **Re: United States v. Frankie Torres**
> **07 Cr. 957 (RJS)**

Dear Judge Sullivan:

      The Government respectfully submits this letter in advance of the sentencing of Frankie Torres (the "defendant"), which is scheduled for May 29, 2008, at 11:30 a.m.  At the initial sentencing hearing on May 6, 2008, the Court requested that the Government respond in writing to three issues. First, the Court requested that the Government investigate the status of the defendant's pending state prosecution for two narcotics offenses. Second, the Court requested that the Government advise the Court as to the Government's position on the scope of the Court's legal authority to consider the pending state charges in determining the appropriate Guidelines range or sentence for the defendant. Third, the Court requested that the Government advise the Court as to its position on whether: (a) sentencing should be delayed until the resolution of the state case; or (b) the court should seek to amplify the record with regard to the pending state narcotics charges for the purpose of determining the appropriate sentence in the instant case. The Government's responses to each of the Court's inquiries are set forth below.

### Background

      The instant investigation began after investigators at Citibank, NA, took note of a pattern of "check kiting" – the depositing of checks unsupported by sufficient funds into an account followed by withdrawals executed before bank could determine that the checks were bad – in 14 different Citibank account. (PSR ¶ 8). One of the accounts implicated in the apparent check kiting scheme belonged to Frankie Torres, the defendant. (PSR ¶ 9). Citibank investigators later contacted agents with the United States Secret Service and the U.S. Postal Inspection Service. On May 16, 2007, the defendant met with Postal Inspectors in Manhattan and admitted his participation in the check-kiting scheme. (PSR ¶ 10). The total loss to Citibank and its

customers during the time period that the defendant was involved in the scheme exceeded $70,000. (PSR ¶ 12). On July 12, 2007, federal agents arrested Torres on the basis of the conduct described above. (PSR ¶ 11).

The same day, Torres was presented before Magistrate Judge Theodore Katz. Judge Katz set the terms of the defendant's release at a personal recognizance bond of $50,000, to be cosigned by one financially responsible person, with travel restricted to the Southern and Eastern Districts of New York, in addition to standard conditions of pre-trial release, including a requirement that Torres commit no additional crimes.

On or about July 27, 2007, officers of the New York City Police Department ("NYPD"), arrested the defendant in Bronx County, for selling cocaine base, in violation of New York Penal Law 220.43. In or about September 2007, the Pre-Trial Services Department discovered a record of the arrest and contacted Magistrate Judge Frank Maas as well as the undersigned Assistant United States Attorney. On October 12, 2007, a grand jury in the Southern District of New York returned Indictment 07 Cr. 957 (RJS), charging the defendant with one count of bank fraud and one count of conspiracy to commit bank fraud. The same day, October 12, 2007, the defendant was arrested a second time for selling cocaine base in Kings County, in violation of New York Penal Law 220.43.

As a result of these arrests, Your Honor issued a bench warrant for the defendant on the basis of the suspected violation of the terms of his pre-trial release. The defendant was taken into federal custody on or about November 7, 2007.

On January 4, 2008, the defendant pled guilty before Your Honor to both Counts of the Indictment. The plea was entered pursuant to the terms of a plea agreement with the Government which is attached to this letter as Exhibit A. On May 6, 2008, the parties appeared before Your Honor for sentencing. Your Honor adjourned sentencing to May 29, 2008, and directed the Government to respond to the issues described at the outset of this letter by May 20, 2008.

**Guidelines Calculation**

As described in the Pre-Sentence Report (PSR ¶ 4), pursuant to U.S.S.G. § 3D1.2(a), Counts One and Two are grouped. Because Counts One and Two are grouped, the offense level applicable to the group is the highest offense level of the counts in the group, pursuant to U.S.S.G. § 3D1.3(a). Here, the offense levels are the same for both Counts. Pursuant to U.S.S.G. § 2B1.1(a)(1)(B), the base offense level for both Counts of the Indictment is 7. Because the intended loss resulting from the offense was more than $70,000 but not more than $120,000, the offense level is increased by 8 levels. Because the defendant has accepted responsibility, a 2-level reduction is warranted, pursuant to U.S.S.G. § 3E1.1(a). The total offense level is therefore 12. (PSR ¶ 4(g)).

The PSR correctly calculates the defendant's criminal history category is I, as a result of his lack of any criminal history points. (PSR ¶ 4(f)). Based on the total offense level of 13 and a criminal history category of I, the applicable Guidelines range is 12 – 18 months.

## Applicable Law

The United States Sentencing Guidelines (the "Guidelines") still provide strong guidance to the Court in light of *United States* v. *Booker*, 543 U.S. 220 (2005) and *United States* v. *Crosby*, 397 F.3d 103 (2d Cir. 2005). Although *Booker* held that the Guidelines are no longer mandatory, it held also that the Guidelines remain in place and that district courts must "consult" the Guidelines and "take them into account" when sentencing. 543 U.S. at 264. As the Supreme Court recently stated, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range" — that "should be the starting point and the initial benchmark." *Gall* v. *United States*, 128 S. Ct. 586, 596 (2007).

After that calculation, however, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): "the nature and circumstances of the offense and the history and characteristics of the defendant" (§ 3553(a)(1)); the four legitimate purposes of sentencing (§ 3553(a)(2)); "the kinds of sentences available" (§ 3553(a)(3)); the Guidelines range itself (§ 3553(a)(4)); any relevant policy statement by the Sentencing Commission (§ 3553(a)(5)); "the need to avoid unwarranted sentence disparities among defendants" (§ 3553(a)(6)); and "the need to provide restitution to any victims" (§ 3553(a)(7)). *Gall* v. *United States*, 128 S. Ct. at 597.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

> (A)   to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B)   to afford adequate deterrence to criminal conduct;
>
> (C)   to protect the public from further crimes of the defendant; and
>
> (D)   to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

Courts may not presume that the appropriate sentence necessarily lies within Guidelines range, but "the fact that § 3553(a) explicitly directs sentencing courts to consider the Guidelines supports the premise that district courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process." *Gall*, 2007 WL 4292116, at

*7 n.6. Their relevance throughout the sentencing process stems in part from the fact that, while the Guidelines are advisory, "the sentencing statutes envision both the sentencing judge and the Commission as carrying out the same basic § 3553(a) objectives," *Rita* v. *United States*, 127 S. Ct. 2456, 2463 (2007), and the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," *Gall*, 2007 WL 4292116, at *6; *see also Rita* v. *United States*, 127 S. Ct. at 2464.  To the extent a sentencing court varies from the Guidelines sentence, "[it] must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Gall*, 126 S. Ct. at 597.

Here, where the offense level is 13, and the Criminal History Category is I, the Guidelines range is 12-18 months' imprisonment, and the Guidelines provide that range must be satisfied by a term of imprisonment.  U.S.S.G. § 5C1.1(f).

**Discussion**

    **A.**    **Status of the Defendant's Pending State Prosecution for Narcotics Offenses**

On or about May 14, 2008, the undersigned AUSA spoke with Assistant District Attorney Christine Stover of the Bronx District Attorney's Office. ADA Stover advised the Government that her office is currently prosecuting the defendant for the two narcotics sales of which the Government is currently aware. She indicated that the defendant had been indicted on the basis of sales to an undercover officer and other evidence, and stated that the charges include one count of conspiracy in the second degree and two counts of felony sale of a controlled substance. ADA Stover advised that the defendant had entered a plea of "not guilty," and that discussions were ongoing between the Bronx District Attorney's Office and the defendant regarding a possible disposition. She stated that no trial date had been set, and that the State planned to writ the defendant back into state custody after the defendant's federal sentencing. ADA Stover also advised that, in the event the defendant is convicted, the State planned to seek a order that the sentence imposed be consecutive to any federal sentence.

    **B.**    **Scope of the Court's Authority to Consider the Pending State Charges**

Your Honor requested that the Government advise the Court as to the Court's legal authority to consider the pending state charges in determining the appropriate Guidelines range or sentence for the defendant.  The Federal Sentencing Guidelines make clear that the computation of criminal history points does not include any crime for which there has been no conviction. See U.S.S.G. § 4A1.2(a) (defining countable "prior sentence" as "any sentence previously imposed upon adjudication of guilt, whether by guilty plea, trial, or plea of nolo contendere, for conduct not part of the instant offense); see also Application Note 1 to § 4A1.2 (noting that "a conviction for which the defendant has not yet been sentenced is treated as if it were a prior sentence under § 4A1.1(c) if a sentence resulting from such a conviction otherwise would have been counted."). Pursuant to U.S.S.G. § 4A1.3, however, the Court retains authority to impose an "upward departure" if "reliable information indicates that the defendant's criminal

history category substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes." Moreover, under the sentencing statute, 18 U.S.C. § 3553, the Court is required to consider "the need for the sentence imposed . . . to protect the public from further crimes of the defendant" in addition to the other factors described above which might justify a sentence above an appropriately calculated guidelines range. However, the Guidelines specifically prohibit the court from considering a prior arrest in determining whether an upward departure is appropriate. U.S.S.G. § 4A1.3(a)(3)

In United States v. Juwa, 508 F.3d 694 (2d Cir. 2007), the Court of Appeals recently addressed the questioned of what information a district court may consider at sentencing, with regard to a defendant's charged criminal conduct in the absence of a conviction, to justify an increased sentence. In Juwa, the defendant pled guilty, pursuant to a plea agreement, to one count of possession of child pornography, in violation of 18 U.S.C. § 2252. Id. at 696. The PSR noted that Juwa faced pending state charges in Rockland County for sexual conduct against a child, sexual abuse of a minor, and various criminal sexual acts involving a minor. Id. At sentencing, the district judge indicated that he was considering an upward departure and that he was "interested in the status and timeline of the Rockland County case, whether [the defendant] was going to plead guilty to those charges, and if and when he would be sentenced in that case." Id. at 697. The court instructed "the defense and the government 'to contact their corresponding parties in the Rockland County case' and clarify these issues." Id. The court then adjourned the proceeding for approximately four months. Id. When sentencing resumed, the district court noted that it had received a letter from the Government indicating that the State case would not be resolved until after the federal sentencing, that the defendant intended to plead guilty, and that the anticipated sentence was five years of imprisonment, to run concurrently with the federal sentence. Id. The defendant's attorney indicated that he agreed with the statements in the letter, and requested a Guidelines sentence. Id. The district judge then stated that, based on the pending state charges and the defendant's representation that he intended to plead guilty to the state charge of felony sexual abuse, as well as other information, the court intended to impose an upward departure or, alternatively, to impose a higher sentence on the basis of the 3553 factors. Id. at 698. The district judge stated that "Mr. Juwa has engaged in sexual conduct with a minor child. He has done so on repeated occasions." Id. The district judge therefore imposed a sentence of 90 months, which was 39 months higher than the top of the Guidelines range calculated in the PSR. Id. The Court of Appeals reversed, concluding that the sentence was procedurally unreasonable. Id. at 701. The Court reasoned that the district court improperly relied on the state charges and the proffer that the defendant intended to plead guilty to at least one count to conclude, as it had, that the defendant had engaged in a pattern of sexual conduct with a minor.[1]

The most significant implication of the Juwa decision is that a sentencing court must rely on facts that have either been proven, by a preponderance of the evidence, or

---

[1] The Court of Appeals noted that there was some ambiguity in the record with regard to whether Judge Robinson had relied on the finding that the defendant had repeatedly abused a minor.

5

established conclusively by stipulation. See id. at 701. The court therefore may not rely on charges in a pending indictment to enhance a sentence. An important secondary implication of the decision seems to be that a sentencing court, in relying on a defendant's proffer that he intends to enter a guilty plea, must exercise caution with regard to what findings can be made on the basis of such a proffer. The Juwa court did suggest that, in a situation similar that the one addressed in that case, the district court might have created a sufficient basis for its finding by gathering "some additional information, whether testimonial or documentary . . . to provide evidentiary support." Id.

### C. Delaying Sentencing Until the Resolution of the State Case

Rule 32(b)(1) of the Federal Rules of Criminal Procedure provides that "the court must impose sentence without unnecessary delay." The Court of Appeals has noted that "[t]he Sixth Amendment's guarantee to a 'speedy trial' has also been assumed to apply to the imposition of sentence," and has concluded that the appropriate test for the determination of whether a delay is unreasonable is the test used for assessing alleged Sixth Amendment Speedy Trial violations. See United States v. Tortorello, 391 F.2d 587 (2d Cir. 1968) (citing Pollard v. United States, 352 U.S. 354, 361 (1954)). "Four factors are relevant to a consideration of whether denial of a speedy trial assumes due process proportions: the length of delay, the reason for the delay, the prejudice to defendant, and waiver by the defendant." Id. In Tortorella, the Court of Appeals concluded that a three-year delay between the defendant's guilty plea on one count of a multi-count Indictment and sentencing was not unreasonable where the Government had requested "that sentencing be delayed until after the trial of the other counts and the other defendants," and later dropped the charges.

The courts have not clearly defined the contours of the "speedy sentencing" right, as there appear to be no federal circuit decisions finding such a violation. The courts that have examined the issue, however, seem to have generally rejected speedy sentencing claims where delays were the result of procedural necessities and the prejudice to the defendant was limited. See, e.g., United States v. Bryce, 287 F.3d 249 (2d Cir. 2002) (rejecting speedy sentencing claim where 23-month delay was required to address "rehearing motion by the government, the district court conducted a new sentencing hearing, and the district court held an additional hearing on the mandate issue."). There appear to be no decisions addressing the situation of a district court delaying sentencing to allow pending state charges to ripen.

### D. Amplifying the Record with regard to the pending state narcotics charges for the purpose of determining the appropriate sentence in the instant case

The Government and the defendant have entered into a plea agreement with a Stipulated Guidelines Range of 12 – 18 months' imprisonment. The plea agreement does not limit the right of the Government or the defendant to seek a sentence outside of that range on the basis of the 3553 factors, nor does it limit the right of either of the parties to present to the Probation Department or the Court any facts relevant to sentencing. However, the Supreme Court has noted that "when the State enters a plea bargain with a criminal defendant, it receives

immediate and tangible benefits, such as promptly imposed punishment without the expenditure of prosecutorial resources." Town of Newton v. Rumery, 480 U.S. 386, 393 n. 3 (1987). In this case, in exchange for those benefits, the Government agreed to attempt to provide the defendant with some degree of predictability as to his sentencing range. The defendant also notably agreed to relinquish his right to a jury trial and, assuming a sentence were imposed within the Stipulated Guidelines range, his right to an appeal of the sentence. The resources saved, by the Government, by the courts, and by the public defense system, as a result of this agreement are significant. Indeed, a very large percentage of defendants sentenced in this district have open charges pending in various state courts for conduct unrelated to their federal crimes. On the whole, it would be impractical for the Government to attempt to substantiate all unresolved state cases. Beyond the fact that the defendant committed these crimes while on bail, there appears to be no particularly compelling justification for treating this case differently. In this case, the defendant appears to have received the appropriate "punishment" for his apparent violation of the terms of his pre-trial release – he has been detained for approximately the past six months.

While it seems clear that the Court has the authority to hold a Fatico hearing to determine whether the defendant committed the narcotics crimes charged in the state, that procedural device has been used almost exclusively to make factual determinations directly relevant to the calculation of the appropriate Guidelines range for the specific crime charged in the federal Indictment. See, e.g. United States v. Martinez, No. 06-5502-cr., --- F.3d ----, 2008 WL 1990352 at *1 (2d Cir. 2008) (affirming sentence after district court conducted Fatico hearing to determine whether defendant had used the firearm in connection with other felony offenses and therefore four-level increase, pursuant to § 2K2.1(b)(5), was appropriate); United States v. Cuevas, 496 F.3d 256, 267 (2d Cir. 2007) (affirming use of Fatico hearing to determine quantity of cocaine involved and whether five or more participants were involved in defendant's narcotics trafficking scheme); United States v. Salazar, 489 F.3d 555, 556-57 (2d Cir. 2007) (affirming the use of Fatico hearing to determine what the defendant's role was in cocaine trafficking conspiracy).

In the absence of a dispute between the parties with regard to the facts necessary to impose sentence for the charges in this Indictment, it seems likely that adjudicating pending state charges on unrelated conduct would be a suboptimal use of judicial and prosecutorial resources, particularly given that the Bronx District Attorney's Office intends to seeks a consecutive sentence for the defendant.

**Conclusion**

For the foregoing reasons, the Government respectfully submits that a sentence within the Guidelines range calculated in the PSR, 12 to 18 months' imprisonment, would be sufficient, but not greater than necessary, to achieve the legitimate purposes of sentencing.

Respectfully submitted,

MICHAEL J. GARCIA
United States Attorney
Southern District of New York

By: _____/s/_____
Randall W. Jackson
Assistant United States Attorney
212-637-1029

cc:   Anthony Ricco, Esq.